Robert J. **BYKOWICZ**, et al.,
Plaintiffs–Appellees,

v.

**PULTE HOME CORPORATION**, et al., Defendants–Appellants.

No. 90–2923.

United States Court of Appeals,
Fifth Circuit.

Jan. 6, 1992.

William T. Little, Gilpin, Paxson & Bersch, J. Eugene Clements, Michael D. Kirby Porter & Clements, Houston, Tex., for defendants-appellants.

Ronald J. Restrepo, Doyle, Reed, Restrepo, Harvin & Robbins, Kathleen C. Pickett, Houston, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, WILLIAMS and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

At issue in this Texas diversity action is whether escrow account property tax estimates prepared and used by Pulte (based on charts prepared by ICM) in housing sales constitute a "false representation of a past or existing material fact ... made ... for the purpose of inducing" persons to purchase from Pulte, using mortgages from its subsidiary, ICM, in violation of Tex.Bus. & Com.Code Ann. § 27.01 (Vernon 1987); and whether ICM's actions also constitute gross negligence. A jury found that they did; we REVERSE and RENDER.

## I.

Six married couples (plaintiffs) bought new houses from Pulte in 1983 and 1984.[1] The houses were constructed by Pulte in the greater Houston area, including Harris and Fort Bend Counties. Plaintiffs purchased them with mortgages provided by ICM, Pulte's wholly-owned subsidiary.

When plaintiffs expressed interest in a particular house, a Pulte sales representative prepared a one-page Investment Quotation and provided it to them. In addition to listing the mortgage interest rates and the monthly principal, interest, and insurance payments, it listed the monthly property tax escrow payments. The tax information was derived from tax charts prepared and furnished by Stephen Harshfield, an ICM officer. The charts were used by ICM for loan qualification pur-

poses and to estimate the escrow amounts necessary to pay property taxes on homes it financed. The following statement, set in all capital letters, was included in the Investment Quotation.

INFORMATION IS ESTIMATED AND BASED ON CURRENT PRICES AND INTEREST RATES, WHICH ARE SUBJECT TO CHANGE WITHOUT NOTICE. TAXES AND INSURANCE ARE ESTIMATED.[2]

Plaintiffs alleged that Pulte and ICM incorrectly calculated the tax estimates, derived by multiplying the appraised value by the tax rate. In support, they maintain that the appraised value is equivalent to the purchase price of the home; and that Texas law provides both that properties should be assessed at one hundred percent of market value and that the property must be appraised at market value. On the other hand, Pulte and ICM contend that appraised value should reflect the discounting of purchase price as was used in mass appraisal techniques at the time the estimates were prepared. Harshfield testified that he used 70 percent of the assessed value, because "in Harris County and Fort Bend County, taxes ran in the range of 50 to 75 percent or 50 to 70 percent of assessed value."

Later, at closing, ICM gave plaintiffs a document entitled *ICM IMPORTANT NOTICE CONCERNING FUTURE PROPERTY TAXES & MAINTENANCE FEES*. It was signed by plaintiffs and stated in part:

Your monthly payment reflects a deposit in your escrow account on the basis of estimated improved property taxes. At the beginning of next year, your property will be reevaluated and your taxes computed on that reevaluation. Your monthly payments for [the next year] may or may not reflect a tax increase based on that reevaluation.

---

1. Plaintiffs are Walter and Paula Allen, Jerry and Linda Anderson, Robert and Ann Bykowicz, Patrick and Janet Klem, Sid and Mary Jean McArthur, and Patrick and Terrie Rourke.

2. The statement was printed just to the right of the monthly payment data and above the name of the Pulte representative who prepared the quotation, except on one quotation where it was located below the information and to the right of the name of the Pulte representative.

A comprehensive reappraisal was conducted in the Houston area in the 1980's.[3] It took place in Harris County in 1984 and in Fort Bend County in 1985.[4] Accordingly, the tax escrow amounts stated in the Investment Quotations were inadequate. As a result, ICM increased the amount of the monthly payments to cover the shortages and to avoid them in the future.[5]

Plaintiffs sued in state court on behalf of themselves and all others similarly situated, seeking relief under Tex.Bus. & Com. Code Ann. § 27.01 and, alternatively, for negligence, gross negligence, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA), Tex. Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 1987). Among other things, the tax increase allegedly caused four couples to lose their houses. *See* note 5. After removal, the district court denied class certification; and, following a three-week trial, the jury found that both Pulte and ICM had violated § 27.01 and, also, that ICM was negligent and grossly negligent and had violated the DTPA.

The annual difference between the Investment Quotation estimate and the actual taxes was relatively small. For example, for the Allens, it was approximately $550 a year for 1985–1987; for the Rourkes, approximately $400 a year for 1984–1986. Plaintiffs' compensatory damages included this difference, as well as other elements, including mental anguish. Each couple was also awarded exemplary damages of $225,000.[6]

The district court granted plaintiffs' request that final judgment be entered only under § 27.01 (first cause of action) and for gross negligence (second cause of action), with plaintiffs, within thirty days following the exhaustion of any final appeal, to make an election of remedy. This appeal followed the denial of Pulte and ICM's motion for judgment notwithstanding the verdict or in the alternative for new trial.

## II.

Pulte and ICM contend that (1) the tax estimates do not constitute actionable misrepresentations of past or existing material fact under § 27.01; (2) there is insufficient evidence of ICM's knowledge of the falsity of any actionable misrepresentation upon

---

3. For example, the Bykowiczes and Rourkes purchased their homes in late 1983. After the reappraisal in 1984, Harris County property increased in value from $72 to $115 billion.

4. Two couples purchased homes in Harris County; four, in Fort Bend County.

5. ICM offered plaintiffs the option of taking the shortage and extending it out as much as eighteen to twenty-four months for repayment, "to lessen the burden on the borrower."

6. As stated in the special verdict, incorporated in the final judgment, the cumulative damages awarded were: (1) tax differential—$8,940.74, (2) "out-of-pocket expenses"—$39,748.97, (3) mental anguish—$70,000, and (4) exemplary damages $1.35 million.

Pursuant to the final judgment, compensatory damages awarded against Pulte and ICM, jointly and severally, on the first cause of action (§ 27.01 claim) were: the Allens were awarded $3,680.16, plus prejudgment interest, for actual damages (tax differential, FHA mortgage insurance and attorneys fees to have HUD take mortgage from ICM), and $10,000 plus prejudgment interest for past mental anguish; the Andersons, $1,784.59 plus prejudgment interest, for actual damages (tax differential, lost profit sharing contribution, moving expenses, costs of foreclosure and home improvements), and $10,000 plus prejudgment interest for past mental anguish; the Bykowiczes, $14,275.68, plus prejudgment interest, for actual damages (tax differential, amount lost due to depressed value at time of sale and costs associated with prosecuting claims), and $15,000, plus prejudgment interest, for past mental anguish; the Klems, $12,262.11, plus prejudgment interest, for actual damages (tax differential, cost of sale of home, closing costs on new home, moving expenses, costs of foreclosure when purchaser defaulted, and FHA mortgage insurance), and $10,000, plus prejudgment interest, for past mental anguish; the McArthurs, $12,983.35, plus prejudgment interest, for actual damages (tax differential, the difference between the amount received from tenants now occupying their home and their house payment and a possible sales commission that may be incurred in a future sale of the home), and $10,000, plus prejudgment interest, for past mental anguish; the Rourkes, $3,703.82, plus prejudgment interest, for actual damages (tax differential, costs of foreclosure and loss of home improvements through a foreclosure), and $15,000, plus prejudgment interest, for past mental anguish. The damages were the same on the second cause of action (gross negligence), but judgment was only against ICM.

which to base liability against it under § 27.01(d); (3) there is insufficient evidence of gross negligence; (4) the district court erred in several of its evidentiary rulings, constituting reversible error; and (5) it erred in awarding attorneys fees, damages for mental anguish, and exemplary damages. Because we reverse and render based on the first three points, we need not reach the last two.[7]

" 'The standard for appellate review of a jury's verdict is exacting. The verdict must be upheld unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable men could not arrive at any verdict to the contrary.' " *Granberry v. O'Barr*, 866 F.2d 112, 113 (5th Cir.1988) (quoting *Western Co. of North Am. v. United States*, 699 F.2d 264, 276 (5th Cir.), *cert. denied*, 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983)). " 'If there is evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the jury function may not be invaded.' " *Id.* (quoting *Western Co. of North Am.*, 699 F.2d at 276).

### A.

Section 27.01 provides in pertinent part:

(a) Fraud in a transaction involving real estate ... consists of a

(1) false representation of a past or existing material fact, when the false representation is

(A) made to a person for the purpose of inducing that person to enter into a contract; and

(B) relied on by that person in entering into that contract; ....

(b) A person who makes a false representation or false promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for actual damages.

(c) A person who makes a false representation or false promise with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

(d) A person who (1) has actual awareness of the falsity of a representation or promise made by another person and (2) fails to disclose the falsity of the representation or promise to the person defrauded, and (3) benefits from the false representation or promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

(e) Any person who violates the provisions of this section shall be liable to the person defrauded for reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court.

Tex.Bus. & Com.Code Ann. § 27.01 (Vernon 1987). As noted, although ICM did not present the estimate to plaintiffs, it was found liable under § 27.01(d).

 Section 27.01 is penal in nature and must be strictly construed. *Ratcliff v. Trenholm*, 596 S.W.2d 645, 650 (Tex.Civ. App.—Tyler 1980, writ ref'd n.r.e.). Because it contains the elements of common law fraud, its reliance and materiality elements are the same as those for Texas common law fraud. *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1025 n. 4 (5th Cir.1990) (citing *Richardson v. Salinas*, 336 F.Supp. 997, 1000 (N.D.Tex.1972)).

 To succeed on a § 27.01 claim, a plaintiff's reliance on "the defendant's fraudulent conduct must be justifiable as well as actual." *Id.* at 1025. Such "justifiability" is determined by inquiring whether—"given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud—it is extremely unlikely that there is actual reliance on the plaintiff's part." *Id.* at 1026; *see General*

---

7. Obviously, the award of attorneys fees is va- cated.

*Motors Corp., Pontiac Motor Div. v. Courtesy Pontiac, Inc.*, 538 S.W.2d 3, 6 (Tex. Civ.App.—Tyler 1976, no writ) (no justifiable reliance where representations were such that any person of normal intelligence, experience, and education " 'would recognize at once as preposterous ... or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth' "). In addition to proving (justifiable) reliance, and as provided in § 27.01(a)(1) ("past or existing material fact"), a fraud plaintiff must prove materiality. *Haralson*, 919 F.2d at 1030. "Only representations of material facts are actionable under [a common law fraud theory]." *Id.* (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931).

Pulte and ICM maintain that the estimates (a) referred only to the year in which the Investment Quotation was prepared and as such could not constitute actionable misrepresentations for future years; (b) were not representations of fact, but statements of opinion; (c) were at best opinions of law which are not actionable in Texas; and (d) were based on information equally available to both parties and therefore could not be actionable under Texas Law.

*Richman Trusts v. Kutner*, 504 S.W.2d 539 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.), addressed the meaning of § 27.01 "past or existing material fact". There, a purchaser of a shopping center sued for fraud. *Id.* at 540. In connection with the purchase, the vendor had provided a written statement concerning the center, including detailing income and expenses incident to its operation. *Id.* at 542. Under "Annual Expenses", it listed $297 for insurance. *Id.* The purchaser contended that

following the closing of the sale on March 7, 1969, he discovered that the insurance policy had expired on March 14, 1969. *Id.* The renewal premium was $1,221. *Id.* There was no dispute that the cost of the insurance during the three previous years was $297. *Id.*

The *Richman Trusts* court affirmed a summary judgment for the vendor, holding: "The only representation of a *past* or *existing material fact* made by [the vendor] to [the purchaser] was that the present cost of insurance was $297 per year. This statement or representation was the expression of an existing fact and was not false." *Id.* at 543 (emphasis in original). The court held there was no misrepresentation of past or existing material fact, even though the vendor "admitted knowing that renewal rates were to be higher in the future and did not communicate this information to [the purchaser]." *Id.* The court went on to note that "even if [the vendor] had represented that *future* insurance costs would remain the same such representation of a *future* fact would not be actionable under that statute." *Id.* (emphasis in original).

 Pulte and ICM maintain that the district court erred in allowing plaintiffs to recover damages resulting from increased taxes paid for post-purchase tax years. As described in notes 5 and 8, plaintiffs recovered, as part of their damages, the difference between the taxes paid for those years and the amount stated in their Investment Quotations for the year of purchase—a year not in issue.

The tax estimates refer only to the year in which they were prepared.[8] Moreover, as noted, the Investment Quotation states: "INFORMATION IS ESTIMATED AND

---

**8.** The Andersons, who financed their home through a three-year adjustable rate mortgage, received an Investment Quotation that differed from the other five couples'. The Pulte sales representative filled out two sections of the form for the Andersons, estimating monthly costs for years one and three. Both years reflect identical amounts for taxes, hazard insurance, and community maintenance. The only figures that varied between year one and year three were those for principal and interest. However, the Andersons' Investment Quotation,

like the other plaintiffs', stated: "INFORMATION IS ESTIMATED AND BASED ON CURRENT PRICES AND INTEREST RATES, WHICH ARE SUBJECT TO CHANGE WITHOUT NOTICE. TAXES AND INSURANCE ARE ESTIMATED." Needless to say, it would be impossible to predict three years out the amount needed for taxes and insurance. The Investment Quotation was "based on current prices and interest rates, which [were] subject to change" and were "estimated."

**1052**

BASED ON CURRENT PRICES AND IN-
TEREST RATES, WHICH ARE SUBJECT
TO CHANGE WITHOUT NOTICE. TAX-
ES AND INSURANCE ARE ESTIMAT-
ED." The Investment Quotation does not
make any representation regarding future
taxes.

Three couples received their Investment
Quotations in 1983; they sought damages
incurred as a result of taxes for tax year
1984 and several subsequent. The other
three couples received their Investment
Quotations in 1984. They sought damages
incurred as a result of taxes for several tax
years beginning in 1985.[9] Because the In-
vestment Quotations stated that they were
estimates and were based on current prices
and interest rates which were subject to
change, it was improper to allow damages
based on taxes for years subsequent to the
one covered by the Investment Quotation.

■ As noted, § 27.01 concerns fact, not
opinion. In the alternative, Pulte and ICM
also contend that the tax estimates were
not representations of fact, but statements
of opinion. An estimate is defined as "the
act of appraising or valuing[;] ... an opin-
ion or judgment of the nature, character, or
quality of a person or thing[;] ... a rough
or approximate calculation." Websters
New Collegiate Dictionary 426 (9th ed.
1989). Under Texas law, an expression of
opinion is generally not actionable in fraud.
*McCollum v. P/S Investments, Ltd.*, 764
S.W.2d 252, 254 (Tex.App.—Dallas 1988,
writ denied). In *McCollum,* a real estate
broker showed the plaintiff a cover letter
dated six months earlier from a real estate
appraiser, stating the value of an apart-
ment complex. *Id.* at 253–54. The plain-
tiff purchased the complex without seeing

the complete appraisal or visiting the prop-
erty. *Id.* at 254. He sought rescission and
damages, alleging fraudulent misrepresen-
tation. *Id.* at 253.

The *McCollum* court noted that an ex-
ception to the general rule that pure ex-
pressions of opinion cannot constitute
fraudulent misrepresentations occurs when
"the person giving the opinion has knowl-
edge superior to that of the person relying
upon the opinion, as, for example, when the
facts underlying the opinion are not equally
available to both parties." *Id.* at 254. In
*McCollum,* the real estate appraiser
"based his value assessment on his view of
the property and information available to
the public." *Id.* at 255. The plaintiff "had
the same free access to the property and
other information that [the appraiser] had."
*Id.*

> One cannot, by blinding himself to facts
> set before him, render those who choose
> to look more knowledgeable. "In gener-
> al, one must rely on his own judgment
> and investigate before entering into
> transactions with others. The law does
> not place a premium on negligence or
> unreasonable credulity. Prudence and
> diligence should be exercised in the exe-
> cution of contracts.' "
>
> ... "If the parties have equal means
> of knowledge and no artifice or fraud
> has prevented the person to whom the
> representation was made from making
> an examination and forming a judgment
> in respect to the matter, the representa-
> tion is to be regarded as a mere expres-
> sion of opinion. *Statements which fre-
> quently come within this rule are those
> concerning value.*"

**9.** The date and amount of the estimated taxes
were: November 1984, Allens—$1,680 ($140 per
month); September 1984, Andersons—$2,280
($190 per month); October 1983, Bykowiczes—
$924 ($77 per month); October 1984, Klems—
$1,584 ($132 per month); March 1983, McAr-
thurs—$1,140 ($95 per month); and September
1983, Rourkes—$972 ($81 per month).

The taxes in issue were (the year listed is the
year of assessment; the tax was paid the next
year): Allens—$8,600.16 ($2,228.73—1985,
$2244.39—1986, $2,181.76—1987, and
$1,945.28—1988); Andersons—$10,056.54
($2,753.43—1985, $2,591.16—1986, $2,390.84—
1987, and $2,321.11—1988); Bykowiczes—
$4,048.52 ($1,564.84—1984, $1,192.65—1985,
and $1,291.03—1986); Klems—$8,377.01
($2,144.56—1985, $2,157.23—1986, $2,094.63—
1987, and $1,980.59—1988); McArthurs—
$8,107.38 ($1,584.78—1984, $1,790.93—1985,
$1,729.41—1986, $1,550.46—1987, $1,451.80—
1988); and Rourkes—$4,119.82 ($1,371.22—
1984, $1,351.60—1985, and $1,397.00—1986).
As reflected in note 5, plaintiffs did not recover
all of the taxes in issue.

*Id.* (emphasis in *McCollum*) (quoting *Guitar Trust Estate v. Boyd*, 120 S.W.2d 914, 917–18 (Tex.Civ.App.—Eastland 1938,· no writ)).

The fact that the *McCollum* plaintiff was a real estate broker does not distinguish *McCollum* from this case. The decision turned on equal access to pertinent information, not on the plaintiff's being a broker:

> Even assuming that [the appraiser's] ability to value property surpassed [the plaintiff's], the equal access each had to all pertinent information prohibits [the plaintiff] from claiming he was defrauded by [the appraiser's] opinion..... [The plaintiff] could readily have formulated his own opinion as to the value of the property simply by exercising the ordinary diligence expected of a reasonable purchaser in the marketplace.

*Id.* The *McCollum* court held that because an essential element of the plaintiff's claim—the making of a fraudulent misrepresentation—had been negated, summary judgment against him was proper. *Id.* at 254–55.

Even if the plaintiffs had shown damages arising from differences in the taxes paid for the years in which the Investment Quotations were prepared, there was no "false representation of a past or existing material fact" as required by § 27.01. The tax figures in the Investment Quotations were labeled as estimates; the Quotation stated that the prices and rates were subject to change; and, in addition, the plaintiffs were notified at closing by the Important Notice, which they signed, that "[a]t the beginning of next year, [their] property w[ould] be reevaluated and [their] taxes computed on that reevaluation."

Applying the law of Texas and our deferential standard for review of jury verdicts, the facts and inferences contained in this record strongly and overwhelmingly establish that reasonable jurors could not conclude that defendants falsely represented any past or existing material fact. A jury could not reasonably find that anything more than an estimate of taxes was offered by Pulte and ICM. Furthermore, the estimates pertained only to the years in which they were prepared. No damages were sought for those years. The verdict on the § 27.01 claims must be reversed.

**B.**

ICM also challenges the judgment against it for gross negligence. "To sustain a cause of action for negligence it is necessary to produce evidence of a duty, a breach of that duty, proximate cause and damage." *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984). "What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981) (emphasis in original). "In determining whether there is some evidence of the jury's finding of gross negligence, the reviewing court must look to all of the surrounding facts, circumstances, and conditions, not just individual elements or facts." *Id.*

■ As for breach of duty, Texas law required tax appraisers, not mortgage companies, to appraise at one hundred percent of market value.[10] The evidence showed that mass appraisal techniques in use at the time the Investment Quotations were prepared did not produce appraisals equal to full market value. When Harshfield prepared the tax estimates, his research indicated that the values used were not one hundred percent of market. He determined that "there was a noncompliance with the state statute." As a matter of law and fact, there was no breach of duty by ICM.

■ Furthermore, the jury's finding of causation cannot stand. There are two elements to proximate cause under Texas

---

**10.** Texas' Property Tax Code provides:

The assessment of property for taxation on the basis of a percentage of its appraised value is prohibited. All property shall be assessed on the basis of 100 percent of its appraised value.

V.T.C.A. Tax Code § 26.02 (1992 Supp.).

Law: cause in fact and foreseeability. *See Urbach v. United States*, 869 F.2d 829, 831 (5th Cir.1989). Cause in fact is established if the injury would not have occurred "but for" the allegedly wrongful act. *In re Air Crash at Dallas/Fort Worth Airport*, 720 F.Supp. 1258, 1279 (N.D.Tex.1989), *aff'd*, 919 F.2d 1079 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 276, 116 L.Ed.2d 228 (1991). Foreseeability requires that the injury complained of be of such a general character as might reasonably have been anticipated from the defendant's conduct. *Id.*

 The tax estimates were not the cause in fact of plaintiffs' alleged damages.[11] As noted, the tax differentials alleged as damages were differentials that occurred for years subsequent to those for which the Investment Quotations were prepared. As also noted, plaintiffs did not allege injuries for the year in which the estimates were prepared. The reappraisals resulted in the higher taxes. And, plaintiffs had been put on notice that the tax information was subject to change.

ICM made clear at closing, through its Important Notice, that "at the beginning of next year, your property will be reevaluated and your taxes computed on that reevaluation." As described, plaintiffs signed that notice at closing.

Under Texas law and our deferential standard of jury verdict review, no reasonable juror could find the evidence here supported a finding of breach of duty or causation.

### III.

Accordingly, we REVERSE and RENDER in favor of Pulte and ICM.

---

11. As noted, the total tax differential awarded plaintiffs for several years was only $8,940.74; but the damages for out-of-pocket expenses and mental anguish totalled $39,748.97 and $70,000.