**Alfredo GUTIERREZ, Appellant,**

v.

**SCRIPPS–HOWARD, Individually, Jay Ambrose, Individually and in his capacity as Managing Editor, Ruben Ramirez, Individually and in his capacity as Chief Photographer, Dean Lindoerfer, Individually and as Assistant Graphic Art Manager, Appellees.**

No. 08–91–00076–CV.

Court of Appeals of Texas, El Paso.

Jan. 8, 1992.

Opinion on Motion for Rehearing Feb. 12, 1992.

Linda Y. Chew, Susan Larsen, El Paso, for appellant.

J. Monty Stevens, Dudley, Dudley and Windle, Malcolm Harris, El Paso, for appellees.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a summary judgment denying recovery to a free-lance photographer, who while on assignment in Cd. Juarez, Mexico was attacked and beaten by the owner of a hotel about whom the newspaper, who made the assignment, had published adverse articles. We reverse and remand.

### Facts

Alfredo Gutierrez was working as a free-lance photographer when on April 23, 1986, he was advised by John Hopper, the staff photographer for the *El Paso Herald Post,* that there was an assignment from the *Seattle Times* which required the taking of pictures of a new hotel in Cd. Juarez, Mexico. The pictures were to be used in connection with a story the *Times* had picked up from the *Herald Post* about this particular hotel. The pictures were to be on the wire by 2:00 p.m. that day. Before leaving on this assignment, Mr. Gutierrez talked to the paper's photo editor, Ruben Ramirez, who asked that a picture be obtained for the *Herald Post* and to find out when the hotel would open and if it was going to have gambling. Mr. Gutierrez talked by telephone to Terrence Poppa to get the address of the hotel. Mr. Poppa, a reporter for the *Herald Post,* had written an article about the hotel and its owner, Gilberto Ontiveros, who he suggested was a major drug dealer. That information was not given to Mr. Gutierrez.

Upon his arrival at the hotel in Cd. Juarez, Mexico, permission was requested to take pictures of the hotel. After waiting to see the general manager, he was introduced to a person who said he was Gilberto Ontiveros. He had a gun and ordered Mr. Gutierrez to empty his photo bag. Then, he said: "Well, those sons of bitches at the Herald Post wrote all these stories about me, saying that I was a drug kingpin and all this and they slandered my name. They are going to pay me for that. I am just an honest businessman and I am not involved in any of those things." Eventually, Mr. Gutierrez was kicked, beaten and eventually accused of being a DEA agent. His life was threatened and on several occasions he thought he would soon be killed. After a lengthy confrontation, he was left in a desert area to make his way back to El

Paso without any money, without his camera equipment and certainly without pictures of the new hotel.

This suit was filed against the *El Paso Herald Post* and its parent company, Scripps–Howard, and the publisher and editor and several staff members of the newspaper. It is alleged that the Appellees failed to warn of a danger associated with the assignment in Cd. Juarez, Mexico which danger was created by the newspaper stories about the owner of the hotel. It is also alleged that the Appellees concealed information about the type of individual the Appellant would come in contact with on this assignment and who had been labeled by the newspaper story as a "Drug Czar". The Appellant seeks to recover both actual and punitive damages.

The Appellees filed their motion for summary judgment and contend that they had no duty to warn Mr. Gutierrez in connection with this assignment. Attached were affidavits which reflect that in the industry it is not customary to warn free-lance photographers because they are expected to anticipate potential dangers and to exercise care when on assignment. The employees also stated that they did not foresee that Mr. Gutierrez would be beaten and tortured while on this assignment.

The response asserts that fact issues exist as to the duty owed and the dangers arising from this particular assignment. Attached was the affidavit of Mr. Gutierrez which states as a photographer he had always been warned about any potential danger concerning an assignment, but not this one. Other affidavits reflect a custom in the industry to warn reporters and photographers of a potential danger in an assignment.

### Issue

■ The controlling issue in this case is whether a duty was owed to one assigned to a particular task where a potential danger existed because of prior conduct of the party making the assignment. We conclude that a duty does exist in this case.

### Decision

Negligence is conduct involving an unreasonable risk of harm, and the test for determining whether a risk is unreasonable is supplied by the following formula. The amount of caution 'demanded of a person by an occasion is the resultant of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice to avoid the risk.' Harper, James & Gray, *The Law of Torts*, 2d Ed., Vol. 3, § 16.9, 466, 467–68 (1986).

In *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942), the Court said that if a party negligently creates a dangerous situation, it then becomes his duty to do something about it to prevent injury to others. The Court went further and said if one by his own acts, although without negligence on his part, creates a dangerous situation, the one creating the danger must give warning of the danger or be responsible for the consequences. In applying Texas law, the Fifth Circuit has said that a duty to warn exists on the part of a party creating a dangerous situation, although without negligence on his part. *Ford Motor Company v. Dallas Power & Light Company*, 499 F.2d 400 (5th Cir.1974).

■ In *Otis Engineering Corporation v. Clark*, 668 S.W.2d 307 (Tex.1983), the Court in a five to four decision recognized a duty, where none had previously existed, upon the part of an employer for conduct of an employee who was released from work and permitted to drive from his place of employment while intoxicated. In this case, the danger of harm was to third persons. Four years later in a unanimous opinion, the Supreme Court in *El Chico Corporation v. Poole*, 732 S.W.2d 306 (Tex. 1987) recognized liability of a party who sold intoxicants to a driver who later had a vehicle accident and killed a third party. Justice Spears in that opinion said "[t]he duty here is merely the application of the general duty to exercise reasonable care to avoid foreseeable injury to others." *Id.* at 311. He also said "[l]iability is grounded in the public policy behind the law of negli-

gence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission." *Id.* at 315. Foreseeability does not require the actor to anticipate in the particular incident, but only that he reasonably anticipate the general character of the injury. *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546 (Tex. 1985).

Of somewhat similar import is the holding in *Gooden v. Tips,* 651 S.W.2d 364 (Tex.App.—Tyler 1983, no writ) which recognized that a physician who prescribes drugs for a patient which the physician knows or should know has an intoxicating effect, has a duty to the public to warn the patient not to drive while under the influence of the drug.[1] In each of those cases, the Courts were dealing with a duty to the public. In our case, the issue is with regard to a duty to an individual on assignment from the party which by its conduct has created the potential danger to that individual. In each of the three cases involving intoxicants, the public was placed in the position of a potential danger. In our case, only the Appellant and not the public was placed in a position of potential danger. We see no reason to restrict liability regardless of the status of the person who may be injured. If the doctor in the *Gooden* case owed a duty to the public, most certainly he owed a duty to his patient who could be injured from the potential danger of the prescribed intoxicant.

We find of considerable interest the opinion in *Irby v. St. Louis County Cab Company,* 560 S.W.2d 392 (Mo.App.1977). In that case, a cab driver was dispatched as an "independent cab driver" into an area of St. Louis alleged to be a "high crime area" where he was murdered. Suit was brought alleging a failure to provide means to protect the decedent from intentional criminal acts of third persons. The trial court dismissed on the grounds that the petition did not state a cause of action. The appellate court affirmed, a result with which we would concur. Certainly, in that case the cab company did not create the danger. In its opinion, the Court said:

> The duty of care is limited to the protection of one from reasonably foreseeable danger. The test of whether there is a likelihood of future events giving rise to a duty to take precautions to avoid it, '... is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable mind to take the precautions which would avoid it....' *Zuber v. Clarkson Constr. Co.,* supra, [363 Mo. 352] 251 S.W.2d [52] at 55 [ (1952) ]. It is said that, '... ordinarily, the duties imposed by the law of negligence arise out of circumstances and are based on foreseeability or reasonable anticipation that harm or injury is a likely result of acts or omissions....' *Green v. Kahn,* 391 S.W.2d 269, 275 (Mo.1965).

560 S.W.2d at 394–95.

In this case, we conclude that the reasonable anticipation that harm or injury would result from the prior articles stating that the hotel was owned by a drug czar created a duty to warn a person going to the hotel seeking pictures and other information while wearing a press pass identified with the *El Paso Herald Post.* In this day and age, anyone dealing with a drug dealer, and particularly those who attempt to expose their conduct, could be expected to be at some risk. Mr. Gutierrez was sent to the hotel by the paper which published the articles about its owner while wearing a press pass which identified him with that paper and without any warning or prior knowledge of what the paper had published about the owner of the hotel. We conclude that such conduct created an unreasonable risk of harm which was reasonably foreseeable.

The facts in this case are clearly distinguishable from the facts in *Williams v. Sun Valley Hospital,* 723 S.W.2d 783 (Tex. App.—El Paso 1987, writ ref'd n.r.e.) where the Court was faced with the question of

---

1. See this and other cases noted in Harper, James & Gray, *The Law of Torts,* § 16.12, n. 14, 497–98.

whether a duty was owed by a hospital to a motorist who claimed to have been injured when an escaped patient jumped in front of her car. In that case, this Court said no duty existed because there was no threat or danger to a "readily identifiable person". *Williams,* 723 S.W.2d at 787. In the case now before the Court, such person is readily identifiable as the one sent to the hotel where the owner had been identified as a drug czar.

■ Generally, a person's criminal conduct is a superseding cause extinguishing liability of a negligent actor. However, the tortfeasor's negligence is not superseded when the criminal conduct is a foreseeable result of the negligence. *El Chico Corporation v. Poole,* 732 S.W.2d 306 (Tex.1987). Who could not anticipate some possible harm in sending a photographer to the front door of one labeled a drug czar in newspaper articles and having him ask for permission to take pictures for a newspaper?

We sustain Point of Error No. One. The judgment of the trial court is reversed, and the case remanded to that court.

### WOODARD, Justice, concurring.

I concur with Chief Justice Osborn. It is a matter of common knowledge that drug dealers generally have a propensity for violence. They must operate their lucrative and cash laden businesses outside the law. They do not have the law's protection from robbery, thefts and other crimes or from invasive acts of competitors. They have no legal recourse for unpaid debts. They must continually live with the potential for arrest from both honest and corrupt officials and with the possibility of assassination by other gangsters. From the alcohol gangsters of the Volstead Act era to the present day drug gangsters, the news reports are replete with acts of violence brought about to settle differences. This is true in Mexico, the United States and in other countries. Focusing public attention upon gangster activities increases the pressure of control by both honest and corrupt government. With due respect to my dissenting colleague, Justice Koehler, I believe that the danger of printing derogatory articles about a person conducting a business commonly associated with unlawful violence differs remarkably from any danger of printing derogatory articles about a politician or judge. I believe that an ordinary prudent reporter would want to know if the object of his assignment was a known gangster. I further believe that an ordinary prudent editor would want his reporter to know that the reporter was dealing with a known gangster. An extraordinary danger existed, and there was a duty to warn.

### KOEHLER, Justice, dissenting.

I respectfully dissent from the majority opinion. I disagree that the newspaper had a duty to warn Gutierrez, a free-lance photographer who was assigned to photograph a new hotel in Cd. Juarez, Mexico that it had created a potentially dangerous condition by printing an adverse article about the reputed owner of the hotel, Gilberto Ontiveros.

Did the duty arise because Ontiveros was already dangerous by virtue of being a drug dealer or did the duty arise because the derogatory article made him dangerous, as contended by Gutierrez? In order to find a duty, must we first assume that all drug dealers are dangerous and that the *El Paso Herald Post* knew or should have known that drug dealers generally were, or Ontiveros specifically was dangerous in the sense that they or he would be apt to assault any reporter who tried to photograph the drug dealer's property or ask a question. There is no allegation or summary judgment proof suggesting that the *Herald Post* knew or should have known that Ontiveros was a man of violence or that he had threatened to assault reporters or photographers generally or *Herald Post* reporters specifically. On the assumption that he was already dangerous, the *Herald Post* could not make him dangerous by printing the article naming him as a "top drug figure in Juarez today." Based on that assumption, the newspaper would have had a duty to warn even if no article had been written.

Or are we to assume that he was not all that dangerous until the newspaper printed the articles creating a dangerous situation and as a result, the newspaper staff knew or should have known that he had become dangerous (more dangerous)? On the latter assumption, the newspaper would have a duty to warn every time it printed a derogatory article, true or not, about any person, be he a politician, a judge or whoever.

The majority have found a duty to warn arose because the newspaper published the derogatory story about Ontiveros which created a dangerous situation and because it was foreseeable that Ontiveros would react in some violent manner as a result of the derogatory articles, citing among other cases *El Chico Corporation v. Poole*, 732 S.W.2d 306 (Tex.1987). *El Chico* is a case where the Court found a common law duty for a liquor licensee not to sell alcoholic beverages to an intoxicated person, the duty being owed to third persons who might be injured by the intoxicated person's criminal act of driving while intoxicated as well as to the intoxicated person himself. While it is readily foreseeable both by common knowledge and statute that intoxicated persons will commit a criminal act by driving a motor vehicle, it is not common knowledge nor foreseeable that a drug dealer who happened to be a hotel owner and manager would react violently and commit the kind of offenses generally that were committed by Ontiveros on Gutierrez. As stated in *El Chico* and *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985), foreseeability does not require that the tortfeasor anticipate the particular accident, but only that he reasonably anticipate *the general character of injury*. Arguably, the *Herald Post* should have anticipated that Gutierrez might be ordered off the property but it could not have reasonably anticipated generally the kind of assault and criminal violence that was visited upon him merely by requesting that he photograph the hotel and make some inquiries.

Logically, if the newspaper has a duty to warn an independent contractor such as Gutierrez, it has the same duty to warn its own employees anytime they are sent out on an assignment in which they might come in contact with a person or organization allegedly involved in criminal activities and about whom or which the newspaper has written something derogatory or unkind. All news media organizations would have the same duty to warn under such circumstances.

For the reason stated, I would hold that the newspaper did not have a duty to warn Gutierrez that he might be assaulted and tortured by Ontiveros as a result of the derogatory articles and would thus affirm the summary judgment granted in the newspaper's favor.

## OPINION ON MOTION FOR REHEARING

The Appellees have filed a motion for rehearing in which they again assert they owed no duty to Mr. Gutierrez and that his injuries were not foreseeable. They argue this is certainly the case where criminal acts of a third party are involved. Relying upon *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985), they assert there must be evidence of similar prior criminal activity of which the defendants were aware. In that case, the Court did state that the evidence is replete with instances of prior violent crimes occurring at the apartment where the rape occurred. But, the Court, in quoting Restatement (Second) of Torts § 448 (1965), noted that a tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence. As noted in Justice Woodard's concurring opinion, it is common knowledge that drug dealers generally have a propensity for violence, and the reason that it is common knowledge is because newspapers like the *El Paso Herald Post* report such events on almost a daily basis.

The facts in this case are much different from those in Nixon. A fact issue was raised as to whether the assault upon Mr. Gutierrez resulted from the published articles of the newspaper which assigned him the task of taking the pictures of the hotel

operated by his assailant. We believe there is a fact issue concerning the published articles creating an unreasonable risk of harm about which there was no warning.

The Appellees state, in their motion for rehearing, that at the time Mr. Gutierrez went to the hotel in Juarez, he was not wearing a press pass which identified him with the *Herald Post*. That statement in our original opinion is not correct. He was carrying press credentials which he showed to the office attendant at the hotel. Appellees also state that Mr. Gutierrez was not sent to the front door of one labeled a drug czar to take pictures. We disagree. He was asked to go to Juarez to take pictures of the hotel. He was also asked to find out when the hotel would open and if it was going to have gambling. He had to approach someone at the hotel to get that information. The most likely place to start would be at the front door.

The motion for rehearing is overruled.