**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 99-20361

---

U S QUEST LTD; JOCODY FINANCIAL INC

Plaintiffs-Appellants

v.

GARY KIMMONS; GK INTELLIGENT SYSTEMS INC

Defendants - Appellees

---

Appeal from the United States District Court
For the Southern District of Texas, Houston Division

---

September 13, 2000

Before POLITZ, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Angus, Ltd. ("Angus"), U.S. Quest, Ltd. ("Quest"), and Jocody Financial, Inc. ("Jocody") are independent corporations operated by Mr. Bob Jordan.[1] Quest and Jocody, which are owned by Bob Jordan's daughter, brought this federal question action against GK Intelligent Systems, Inc.

---

[1] Herein, Quest, Jocody, Angus, and Bob Jordan will be referred to collectively as "Jordan," unless otherwise noted.

1

("GKIS") and its CEO Gary Kimmons[1] asserting the following claims: fraudulent inducement of contract, quantum meruit, breach of contract, and violation of state and federal securities laws. The district court granted summary judgment for Kimmons on all claims save one. Jordan timely appealed. For the reasons assigned, we affirm the decision of the district court.

## I. FACTS AND PROCEEDINGS

In or around December 1995, Joelle Verbecke introduced Jordan to Kimmons in the hope that Jordan would be able to provide consulting services to Kimmons. Jordan agreed to assist Kimmons in finding equity investors, director candidates, and technical experts. Jordan also agreed to aid Kimmons in hiring a public relations firm, marketing its software, and identifying potential merger or acquisition candidates. In February 1996, Jordan arranged a meeting in New York between potential investors and directors and Kimmons.

Jordan contends that Jordan and Kimmons agreed orally that Kimmons would deliver 500,000 shares of stock to Jordan as compensation for consulting services performed in 1996. Furthermore, Jordan contends that another $900,000 was invested in Kimmons due to Jordan's services, for which Kimmons allegedly agreed to deliver an additional 90,000 shares of stock to Jordan. Jordan further contends that Kimmons failed to perform this oral agreement, and the parties thus entered into an informal mediation process. Jordan asserts that Jordan and Kimmons agreed during mediation to enter into two written contracts–the first between GKIS and Angus, and the second between GKIS and Quest.

---

[1]GKIS and Kimmons, the defendants, will be referred to as "Kimmons," unless otherwise noted.

2

Subsequently, GKIS and Angus entered into a written contract dated December 24, 1996, entitled "Consulting Agreement." Three of the contract's clauses give rise to Jordan's issues on appeal. First, the contract contains the "direct efforts" clause, which accorded Jordan "[a] finder's fee for contacts with brokers or other financial consultants whose clients make an equity investment in [Kimmons]," and further provided that if "[a] contact make[s] a direct equity investment in [Kimmons] through the direct efforts of [Jordan] . . . [Jordan] will be paid a fee . . . equal to ten percent (10%) of the equity investment of such direct contact." Second, in its "initial grant of shares" clause, the contract provided Jordan with "[s]eventy-five thousand (75,000) shares of GKIS common restricted stock . . . as compensation for all services rendered prior to the date of execution of this agreement as well as those services to be rendered pursuant to this agreement." Finally, the provisions governing compensation for services in the contract were followed by a "merger clause":

> **Prior Agreements.** This Agreement supersedes and is in lieu of any and all prior or
> contemporaneous agreements, communications or understandings, whether written
> or unwritten, verbal or tacit, or implied by prior dealings, between and among any of
> the parties, their predecessors or affiliates with respect to the matters set out herein.
> . . ."

Kimmons contends that the only agreement between the parties was the above-described "Consulting Agreement" between GKIS and Angus that was executed on December 24, 1996. Kimmons denies that there was an additional oral agreement between the parties. Jordan, on the other hand, maintains that another oral agreement, providing that GKIS and Quest would enter a written contract, was reached, but that Kimmons failed to execute the written instrument despite Jordan's efforts to that end.

3

The district court granted Jordan 10,000 stock warrants pursuant to the December 24, 1996 contract as compensation for services Jordan provided in 1997. The district court granted summary judgment to Kimmons on all the remaining issues. Only Jordan appealed.

## II. DISCUSSION

### A. Fraudulent Inducement Claim

Jordan alleges that Kimmons fraudulently induced Jordan to sign the December 24, 1996 contract between Angus and GKIS by promising that a second written agreement would be executed between Quest and GKIS. Jordan therefore seeks to recover based on a common law fraud claim, alleging that Kimmons never intended to enter into a second written agreement.

Under Texas law, fraud requires "a material representation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). A promise to do something in the future constitutes fraud only if the promise is made with no intention of performing it at the time it was made. *See id.* at 48. A "mere failure to perform a contract is not evidence of fraud." *Id.* The party alleging fraud must present evidence that is relevant to the other party's intent at the time the representation was made. *See id.* Furthermore, the terms of a written contract cannot be displaced by prior negotiations. *See Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 141-42 (Tex. App.- Houston 1995, writ denied). "When experienced executives represented by counsel voluntarily sign a contract whose terms they know, they should not be allowed to claim fraud in any earlier oral statement inconsistent with a specific contract provision." *Id.* at 142.

4

Kimmons contends that summary judgment is appropriate because the merger clause in the December 24, 1996 contract prevents Jordan from establishing that he entered that contract in reliance upon Kimmons' alleged promise to enter a second contract, an element of fraudulent inducement. *See Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997). It is true that a simple merger clause restricting recovery to that provided by the terms of the contract does not preclude a fraudulent inducement claim, and the parol evidence rule does not preclude proof of the fraud. *See id.* at 179 (citing *Dallas Farm Machinery Co. v. Reaves*, 307 S.W.2d 233, 239 (Tex. 1957)). However, the merger clause in the December 24, 1996 contract provides that the contract "is in lieu of any and all prior or contemporaneous agreements, communications or understandings, whether written or unwritten . . . between and among any of the parties . . . or [their] affiliates with respect to the matters set out herein." Because the merger clause expresses the parties' intent to replace with the December 24, 1996 contract any other agreements, communications, or understandings with respect to compensating Jordan for consulting services rendered to Kimmons, it tends to show that they intended to abandon any alleged agreement to enter a second written contract. Thus, the written contract expressly contradicts Jordan's assertion that an alleged oral agreement between the parties survived the December 24, 1996 written contract and was to be incorporated in a second written contract.

Moreover, Jordan has failed to demonstrate a genuine dispute as to a material issue of fact with respect to each of the elements of a fraudulent inducement claim. In opposition to the motion for summary judgment, Jordan introduced a facsimile transmission and an affidavit from Dr. W.E. Borsarge, Jr.. But that evidence tends to show only that prior to the written contract the parties were contemplating entering into two written contracts—one between GKIS and Angus and one between

5

GKIS and U.S. Quest. Consequently, Jordan's opposition fails to demonstrate a genuine conflict in evidence from which a reasonable trier of fact could infer that Kimmons intentionally made a false representation that he would enter a second wri tten contract to induce Jordan to sign the GKIS-Angus contract.

We agree with Kimmons that Jordan's countervailing evidence provides only a basis for a finding that prior to entering the written contract the parties discussed or considered entering into two written contracts. Jordan's opposition does not reasonably support a conclusion that Kimmons falsely represented an intention to enter a second written agreement to Jordan.

Accordingly, the summary judgment rejecting this claim by Jordan is affirmed.


B. Breach of Contract Claims

i. Ambiguities in the Contract's Terms

The parties disagree as to what services were performed after execution of the December 24, 1996 contract. Kimmons argues that although Jordan continued to provide consulting services to Kimmons until October 1997, Jordan did not make any introductions of persons to Kimmons that resulted in investments after December 24, 1996. Therefore, Kimmons argues, Jordan is not entitled to any finder's fees under the "direct efforts" clause of the December 1996 contract. Jordan contends that it is entitled to such finder's fees because of its direct efforts which resulted in new investors for Kimmons after the contract execution date. Resolution of this issue turns on the meaning of "direct efforts" in the December 1996 contract.

Jordan contends that summary judgment is not appropriate because the terms of the contract are ambiguous and create a  genuine dispute as to a material issue of fact for the jury. However,

6

while an ambiguous contractual term may create a fact issue for the jury, "[w]hether a contract is ambiguous is a question of law for the court to decide by looking at the contract in light of the circumstances existing at the time the contract was entered into." *Reilly v. Ranger Management, Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

> If [an] agreement is worded so that this Court can ascertain a certain or definite meaning, it is not ambiguous. If the agreement, however, is reasonably susceptible to more than one interpretation, it is ambiguous. A contract is not ambiguous merely because the parties disagree upon the correct interpretation or upon whether it is reasonably open to just one interpretation. If the agreement is ambiguous, summary judgment is improper because interpretation of the agreement is a fact question for the jury.

*Childers v. Pumping Systems, Inc.*, 968 F.2d 565, 569 (5th Cir. 1992).

Applying that rule, we conclude that the "direct efforts" clause of the December 24, 1996 contract is not ambiguous in any material respect. The clause provides that Jordan will be paid a fee "should [a] [Jordan] contact make a direct equity investment in [Kimmons] through the direct efforts of [Jordan] with no broker, attorney, finder, financial consultant or other person or entity due any fees from [Kimmons] arising from the transaction." This provision of the December 1996 contract is not ambiguous in any sense relevant to this case and thus does not, without more, raise a genuine dispute as to a material issue of fact. Jordan did not introduce any evidence from which it reasonably could be found or inferred that Jordan produced a particular investor after December 24, 1996 who purchased an investment from Kimmons. We affirm the district court's summary judgment for Kimmons on this issue.

Jordan also contends that the finder's fee provision, in conjunction with the initial granting of shares, applies to services provided by Jordan prior to, as well as after, the execution of the Consulting Agreement. Kimmons argues that the initial granting of the 75,000 shares was full

7

compensation for all past services and that the Consulting Agreement contemplates that only future services were to be compensated through finder's fees. The initial granting of shares section provides that the granting of the 75,000 shares serves "as compensation for all services rendered prior to the date of execution of this agreement as well as those services rendered pursuant to this agreement." The finder's fee section of the Consulting Agreement provides that Kimmons "will pay to [Jordan] . . .[a] finder's fee for contacts with brokers or other financial consultants whose clients make an equity investment in the Corporation." The plain words of the Consulting Agreement support Kimmons' reading of the contract.

Jordan produced no evidence beyond its conclusory allegations and its pleadings to show any valid grounds for its interpretation of the contract. Finding that the initial grant of shares clause alone was meant to compensate Jordan for prior services rendered to Kimmons harmonizes the provisions of the contract, which otherwise would be in conflict, and most probably reflects the intention of the parties. *See Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983).

ii. Initial Grant of the 75,000 Shares

Jordan contends that there is a genuine issue of material fact as to whether it actually received the full 75,000 shares of stock. Kimmons transferred 65,000 shares of stock to the Plaintiff and 10,000 shares to Verbecke. Jordan argues that the 65,000 shares were transferred prior to the execution of the contract and thus were not pursuant to the contract. In the alternative, Jordan contends that even if the 65,000 shares were transferred pursuant to the contract, Kimmons still owes the other 10,000 shares. Kimmons counters that the stock was delivered seven months after the execution of the contract but that the date of issuance was backdated so that the one-year vesting requirements would lapse sooner. Kimmons also contends that the 10,000 shares were delivered to

8

Verbecke upon the request of Jordan, to reward Verbecke for introducing Jordan to Kimmons. Jordan contends that this transfer of the stock was pursuant to an agreement independent of the one between Angus and GKIS. Alternatively, Jordan argues that Kimmons breached the contract by transferring the stock to Verbecke without a written modification to the contract.

Upon review of the record, we find no evidence to establish a genuine issue of material fact. Kimmons produced a letter, dated July 16, 1997, addressed to its shareholder service company, requesting that 65,000 shares of stock be transferred to Jordan. The letter sets the date of issuance at July 1, 1996. Therefore, Kimmons has produced documentation that supports its allegation that the stock was transferred after the execution of the contract, pursuant to the agreement of the parties. On the other hand, Jordan produced no evidence beyond its conclusory allegations, to support a finding that the stock was transferred prior to the contract. Thus Jordan has not established a genuine issue of material fact as to whether the granting of the 75,000 shares of stock was pursuant to the contract.

Jordan also fails to establish a genuine issue of material fact regarding the transfer of the 10,000 shares to Verbecke. Kimmons produced deposition testimony to show that after the contract was executed, Jordan instructed Kimmons to issue the shares to Verbecke as compensation for her introducing Jordan to Kimmons. Jordan produced no evidence of a contemporaneous complaint from Jordan or any of its agents about not receiving the other 10,000 shares. During the summary judgment hearing, Jordan's counsel contended Kimmons had signed a written agreement with Verbecke to compensate her for introducing Jordan to Kimmons. However, Jordan failed to introduce any such written agreement in opposition to summary judgment. Accordingly, Jordan failed to establish in the summary judgment evidence any genuine dispute with respect to the breach of

9

contract claim. We thus affirm the granting of summary judgment on this issue.

### C. Quantum Meruit Claim

In response to Jordan's claim in quantum meruit for the consulting services Jordan performed, but was allegedly not compensated for, Kimmons argues that quantum meruit is not available because a written contract had been executed between the parties.

In general under Texas law, a party seeking to recover for services rendered will only be able to recover under quantum meruit when there is no express contract between the parties. *See Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). Therefore, a plaintiff may not recover under the general rule of quantum meruit when the claim pleaded fits within the subject matter of a contract between the parties. *See id.* However, the *Truly* court recognized two exceptions: (1) "[r]ecovery in quantum meruit is allowed when a plaintiff has partially performed an express contract but, because of the defendant's breach, the plaintiff is prevented from completing the contract"; and (2) quantum meruit recovery is sometimes allowed when a plaintiff partially performs an express contract that also happens to be unilateral in nature. *See id.* at 936-37.

The December 24, 1996 agreement between the parties was an express contract in which Jordan agreed to provide consulting services for Kimmons, making quantum meruit unavailable. Also, neither of the two exceptions explained in *Truly* applies. Assuming *arguendo* that Kimmons did breach the contract, Jordan was not in any way prevented by Kimmons from completing performance under the bilateral contract. Therefore, summary judgment on the quantum meruit issue is affirmed.

10

D. Securities Fraud Claims

i. State Law Statutory Fraud

Jordan contends that the December 24, 1996 contract violates Texas securities laws because it allegedly involved the transfer of securities under a fraudulently induced contract. Section 27.01(a) of the Texas Business and Commerce Code imposes civil liability for false representations of material facts that are relied on by a plaintiff in entering into a real estate or stock transaction. Fraud under this section consists of either a "false representation of a past or existing material fact, when the false representation is" made to another person with the intent to induce that person to enter into the contract and that person relies on that representation, or "a false promise to do an act, when the false promise is material" and made without the intention of completing it. TEX. BUS. & COM. CODE ANN §27.01(a). Therefore, the securities fraud laws generally embody the same elements of common law fraud, including the elements of reliance and materiality. See *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1026 n.4 (5th Cir. 1991). Section 27.01(a) also applies only to situations where there is an actual conveyance of the stock, and not to situations where there is merely a breach of contract to convey stock. *See Stanfield v. O'Boyle*, 462 S.W.2d 270, 271 (Tex. 1971). This narrow reading of Section 27.01(a) is consistent with the Supreme Court of Texas' interpretation that the statute is penal in nature and thus must be strictly construed. *See Bykowicz v. Pulte Home Corp.,* 950 F.2d 1046, 1050 (5th Cir. 1992).

Intent to defraud is an element of both statutory securities fraud and common law fraudulent inducement. *See Haralson,* 919 F.2d at 1026 n.4. As discussed supra, Jordan introduced no evidence that demonstrates the existence of a genuine issue of material fact as to whether Kimmons intended to enter into two separate contracts. At most the evidence indicates that the parties once

contemplated two contracts, but that they ultimately settled on one. Accordingly, summary judgment is affirmed on this issue as well.

## ii. Federal Securities Fraud

Jordan failed to explicitly plead a federal securities law claim in its complaint. Although the district court denied Jordan an opportunity to file an amended complaint properly including the federal securities law claim, the district judge considered the claim anyway because the court was presented with facts sufficient to allege a federal securities law violation, despite its not being specifically pleaded.[2] Jordan now contends that since the sole basis for jurisdiction was the federal securities law claim, the district court's failure to grant leave to amend the complaint deprived the court of subject-matter jurisdiction over the case because there was no federal question. 28 U.S.C. §1331. However, because the district court in fact considered Jordan's securities fraud claim, which arose under federal law, jurisdiction was proper. 28 U.S.C. §1331.

It is unlawful to make a false statement of material fact or to participate in any acts that "operate as a fraud upon any person, in connection with the purchase or sale of any security." 17 C.F.R. §240.10b-5. "The elements of [a Rule 10b-5 claim] are well-settled: The plaintiff must prove 1) a misstatement or omission 2) of material fact 3) occurring in connection with the purchase or sale of a security, that 4) was made with scienter 5) upon which the plaintiff justifiably relied, 6) and that proximately caused injury to the plaintiff." *Rubinstein v. Collins,* 20 F.3d 160, 166 (5th Cir. 1994). A purchase consists of a "contract to buy, purchase, or otherwise acquire" stock. 15 U.S.C.

---

[2]*See Heimann v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 509 (5th Cir. 1999) (holding that "a complaint is not subject to dismissal with prejudice unless it appears with certainty that no relief can be granted under any set of facts that can be proved in support of its allegations").

12

§78c(a)(13).

The district court granted summary judgment to Kimmons on the federal securities fraud claim because the evidence produced failed to show that there was a genuine dispute as to any material issue of fact which, if resolved Jordan's favor, would entitle him to recover. We agree with the district court's analysis of the evidence in the record. There is no evidence that Jordan was misled as to the performance it was expected to render in order to acquire stock as provided in the Consulting Agreement. Assuming that prior to the December 24, 1996 written contract Kimmons represented that it would enter into two separate contracts in which stock would be transferred to Jordan, Kimmons is still entitled to summary judgment as Jordan has not introduced evidence from which it reasonably could be inferred that Kimmons did not intend to enter into a second contract when it made those representations to Jordan. Thus, Jordan did not establish a submissible case with respect to the element of scienter required under Rule 10b-5. We therefore affirm the district court's grant of summary judgment on the federal securities fraud claim.

Conclusion

Jordan has failed to establish a genuine dispute as to a material issue of fact with respect to any of his claims on appeal. For these reasons, we AFFIRM the district court's grant of summary judgment in favor of Kimmons rejecting Jordan's claims.