# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00336-CV

**R. D. Tips, Inc., Appellant**

**v.**

**Virginia Jett, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
## NO. D-1-GN-11-003799, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

R.D. Tips, Inc. appeals the trial court's order granting summary judgment in favor of Virginia Jett on Jett's claim for breach of a guaranty. In two issues, Tips contends that (1) the trial court erred by granting summary judgment because there was a genuine issue of material fact regarding its affirmative defense that it was fraudulently induced into executing the guaranty and (2) the trial court erroneously sustained Jett's objections to certain of its summary-judgment evidence. We will affirm the trial court's judgment.

## BACKGROUND

Virginia Jett was married to Clifton Mitchell and their community property included interests in North American Life Insurance Co., an insurance company subject to oversight and regulation by the Texas Department of Insurance. In October 2005, Jett filed for divorce. While the divorce was pending, Mitchell began negotiating with Albert Range, an officer of Tips, for the

merger of Tips's subsidiary, MTM Life Insurance Co., with North American Life. Jett was not personally involved in any aspect of those negotiations. The division of Jett and Mitchell's marital estate was resolved by a final decree of divorce rendered on November 6, 2006, and signed by the trial court on June 29, 2007. Pursuant to a mediated settlement agreement, Jett had agreed to relinquish her community property interest in North American Life in exchange for Mitchell's execution of a Secured Owelty Note, payable to Jett, in the principal amount of $4,637,276.40. Jett's agreement was conditioned on Tips's guaranteeing payment of the Note. Mitchell executed the Note with an effective date of November 1, 2006, and Tips executed a Guaranty on May 21, 2007, with an effective date of November 1, 2006. The Guaranty provided that it would become null and void if the merger between MTM and North American Life was abandoned or not completed by August 15, 2007. The merger was accomplished by the deadline.

Mitchell made several of the payments required under the Note but, in November 2011, he failed to make a required $1 million payment. Jett sent correspondence to Mitchell, with a copy to Tips, demanding that Mitchell make the missed payment. Mitchell failed to cure the default and discontinued making further payments required by the Note. Jett then filed suit against Tips alleging that, following Mitchell's default, Tips failed to elect to cure the default and assume all obligations under the Note as provided by the Guaranty. She sought enforcement of the Guaranty and an award of damages in the amount due under the Note, plus principal and interest. Tips filed a general denial and asserted as affirmative defenses (1) that its execution of the Guaranty was induced by Jett's fraudulent misrepresentations or by conduct for which Jett was legally responsible, and (2) failure of consideration for the Guaranty. Tips also included in the allegations supporting

2

its affirmative defenses that "[b]ecause Jett benefitted from the fraud by virtue of the execution of the Guaranty and the completion of the merger, she is liable for fraud under section 27.01 of the Texas Business and Commerce Code." *See* Tex. Bus. & Com. Code § 27.01 (establishing statutory cause of action for securities fraud).

After the parties conducted discovery, Jett filed traditional and no-evidence motions for summary judgment. In her traditional motion for summary judgment, Jett argued that she had established, as a matter of law, all of the elements of her breach of contract cause of action arising out of Tips's failure to perform its obligations under the Guaranty. *See* Tex. R. Civ. P. 166a. She also argued that the evidence established, as a matter of law, that there was adequate consideration to support the Guaranty. In her no-evidence motion for summary judgment, Jett asserted that there was no evidence of an essential element of Tips's affirmative defenses of common-law and statutory fraud. Specifically, Jett challenged the existence of evidence that she made any material misrepresentation with the intent that Tips act on that representation or to induce Tips's reliance on that representation. *See* Tex. R. Civ. P. 166a(i); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011) (setting forth elements of fraudulent inducement); *Robbins v. Capozzi*, 100 S.W.3d 18, 26 (Tex. App.—Tyler 2002, no pet.) (element of statutory fraud is that representation must be made with intent to induce other party to enter contract); *see also U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 406 (5th Cir. 2000) (securities fraud laws generally embody same elements of common-law fraud, including intent to induce reliance on misrepresentation). Jett also argued that statutory fraud does not apply to guaranty agreements and that, while section 27.01 creates a cause of action for statutory fraud, it may not be asserted as an affirmative defense to a breach of contract claim.

Tips filed a response with evidence attached, including the affidavit and deposition testimony of Albert Range. Tips argued that its summary-judgment evidence created a fact issue regarding whether Jett fraudulently induced it into signing the Guaranty. Jett objected to various paragraphs of the Range affidavit and to various pages of the Range deposition. The trial court sustained Jett's objections to four paragraphs of the Range affidavit and overruled the remaining objections. After a hearing on Jett's motion for summary judgment, the court signed an order granting summary judgment in Jett's favor in which it recited that "Plaintiff's cause of action for breach of contract against Defendant is granted in full and all of Defendant's claims or affirmative defenses in this suit are denied or dismissed with prejudice." The order awarded Jett actual damages of $3,327,990.56. The parties then stipulated to an award of $85,000 as Jett's reasonable and necessary attorneys' fees, and the trial court rendered a final judgment awarding Jett damages and attorneys' fees. Tips then perfected this appeal.

## DISCUSSION

In its first appellate issue, Tips asserts that the trial court erred in granting summary judgment in Jett's favor. We review the granting of a motion for summary judgment de novo.[1] *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). When the trial court does not specify the grounds for its ruling, summary judgment must be affirmed if any of the grounds on which judgment was

---

[1] The standards for reviewing a summary judgment are well established and undisputed on appeal. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a(c), (i). Accordingly, we need not repeat them here.

sought are meritorious. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013).

Tips argues in its brief that the trial court erred in granting Jett's motion for traditional summary judgment and her no-evidence motion for summary judgment because the evidence it submitted in its response created a genuine issue of material fact "as to Jett's claim under the guaranty." Specifically, Tips asserts that it could not be held liable under the Guaranty because it was "defrauded in connection with the merger transaction and the guaranty." We understand Tips to argue that its summary-judgment evidence created genuine issues of material fact as to whether it was fraudulently induced into signing the Guaranty as alleged in its affirmative defenses.[2] *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (defendant wishing to assert affirmative defense to defeat summary judgment on plaintiff's claim must urge defense in his response and present sufficient evidence to create fact issue on each element).

A contract is subject to avoidance on the ground of fraud. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). To prevail on a fraudulent-inducement contention, a party must establish the elements of fraud "as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795-99 (Tex. 2001). The elements of fraud are (1) a material misrepresentation, (2) made with knowledge of its falsity or without any knowledge of the truth and as a positive assertion, (3) made with the intention that it should be acted on by the other party, and (4) the other

---

[2] Tips states in his brief that "Jett sought a traditional summary judgment on R.D. Tips' common law fraud claim on the theory that the requisite 'intent to induce reliance' was absent as a matter of law." Tips's pleadings, however, did not include a cause of action against Jett for fraud. Rather, Tips pleaded fraud as an affirmative defense to Jett's breach of contract claim.

party acts in reliance on the misrepresentation and thereby suffers injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47-48 (Tex. 1998). Jett's no-evidence summary-judgment motion was limited to challenging the existence of a fact issue on the third element of Tips's affirmative defense of fraudulent inducement; i.e., whether she made any misrepresentation with the intent that it be relied on by Tips. To raise a fact issue on this element, Tips points to Range's averment that Jett induced it to execute the Guaranty by making misrepresentations about North American Life's financial condition, which it relied on when agreeing to the merger between North American Life and MTM. According to Tips, if Jett had not misrepresented North American Life's financial condition, it would not have entered into the merger or executed the Guaranty.[3]

In his affidavit, Range averred that, while conducting due diligence related to the proposed merger of MTM and North American Life, he reviewed financial statements North American Life filed with the Texas Department of Insurance in 2003 and 2004. These financial statements were signed by Jett in her capacity as North American Life's secretary and treasurer.

---

[3] We observe that the type of representations that would have induced Tips to sign the merger agreement between MTM and North American Life seem conceptually distinct from the type of representations that would have induced Tips to execute the Guaranty, which is the contract at issue in this case. The representation that caused Tips to execute the Guaranty—that Jett would not agree to relinquish her interest in North American Life unless Tips guaranteed payment of the Note—was unrelated to North American Life's financial condition. There is no evidence tending to show that Jett would have agreed to give up her interest in North American Life even if Tips had refused to execute the Guaranty, rendering that representation false or misleading. Nevertheless, Jett did not argue that misrepresentations regarding North American Life's financial condition could not provide the basis for avoiding the Guaranty, and the parties have joined issue on whether there was a fact question with regard to the intent element of Tips's affirmative defenses. We will, therefore, confine our discussion to that dispute.

6

Range stated that he also reviewed "Statutory-Basis Financial Statements" for the years ending December 31, 2004 and 2005, which had been prepared by Deloitte & Touche, North American Life's accounting firm. Tips contends that it relied on these financial statements in deciding to go forward with the merger, which could not be accomplished unless it executed the Guaranty. Tips maintains that, after the merger, it discovered that the financial statements were misleading in various respects and that, had it been aware of North American Life's true financial picture, it would not have gone forward with the merger or executed the Guaranty.

Assuming that both the financial statements filed with the Texas Department of Insurance and the "Statutory-Basis Financial Statements" prepared by Deloitte & Touche were in fact false and misleading, and assuming that Jett knew that they were, there must also be evidence that Jett made the misrepresentations contained in the financial statements with the intent that they be relied on by Tips in its evaluation of whether to consummate the merger. Actionable fraud requires that the party making the representation do so with the actual intent to cause the other party to rely on the falsity, thus inducing it to act in a manner that causes its injury. *See Eagle Props. Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990). Thus, the party making the representation must have intended to induce action or inaction by means of the false representation.

We first consider the "Statutory-Basis Financial Statements" prepared by North American Life's accountants Deloitte & Touche to determine whether they constitute misrepresentations made by Jett with the intent that they be relied on or induce Tips to complete the merger or sign the Guaranty. The statements were prepared by independent auditors, were not signed by Jett, and contain no representations made by her as an officer of North American Life.

7

Moreover, the reports were addressed to North American Life's board of directors and expressly state that the information was intended "solely for the information and use" of North American Life and state insurance departments having jurisdiction over North American Life. The reports further state that the financial statements "should not be used by anyone other than these specified parties." The report to which the financial statements were attached was completed by Deloitte & Touche on or about June 29, 2006, long after Jett ceased being a North American Life officer in 2005. Jett averred that she was not involved with preparation of North American Life's financial statements for any year after 2004, evidence that is uncontroverted. There is no evidence that the representations contained in the Statutory-Basis Financial Statements were made by Jett or by Deloitte & Touche with the intent that they be relied on or induce Tips into completing a merger between MTM and North American Life.

We next consider the financial statements Jett signed as an officer of North American Life and filed with the Texas Department of Insurance in 2003 and 2004. These filings were made in the ordinary course of North American Life's business as an insurance company regulated by the Texas Department of Insurance and well before Tips and Mitchell had even begun discussing a potential merger. There is no evidence that Jett had any knowledge at the time she signed the statements that there would later be discussions between Tips and Mitchell to merge North American Life with MTM. Any representation in the 2003 and 2004 Department of Insurance filings could not have been made to induce that merger. Tips argues, however, that Jett had a "reason to expect" that Tips would rely on the misleading financial statements when conducting its due diligence and, therefore, there is evidence creating a fact issue on the intent-to-induce reliance element of fraud.

*See Emerald Oil & Gas*, 348 S.W.3d at 217-20 (discussing when misleading regulatory filings may constitute evidence satisfying the intent-to-induce reliance element of fraud claim); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 581-82 (Tex. 2001) (party may be liable for misrepresentations that were not made directly to injured party if there is "especial likelihood" that third party will rely on those representations when entering into transaction contemplated by person making representations).

In *Ernst & Young*, the supreme court considered the proof necessary to establish the intent-to-induce reliance element of a fraud claim. 51 S.W.3d at 580. While declining to formally adopt the "reason-to-expect" standard outlined in section 531 of the Restatement (Second) of Torts, the court concluded that the standard was consistent with Texas fraud jurisprudence. *Id.* The court stated, however, that the "reason-to-expect" standard "requires more than mere foreseeability; the claimant's reliance must be 'especially likely' and justifiable, and the transaction sued upon must be the type the defendant contemplated." *Id.* Tips argues that the financial statements Jett signed meet this standard because she became aware of the negotiations regarding the merger in or around August 2006, giving her "ample reason to expect that R.D. Tips would rely on [North American Life's] regulatory filings . . . as part of its decision to engage in a merger." Thus, according to Tips, Jett knew there was an "especial likelihood" that Tips would rely on the information contained in the financial statements she signed and certified on North American Life's behalf.

The fallacy in Tips's argument is that it ignores the temporal component of the supreme court's analysis of the circumstances under which a party making a representation should reasonably expect that there is an "especial likelihood" that the information will reach third parties

9

and influence their conduct. *See id.* Supreme court precedent instructs that if the evidence shows only that Jett made the representations contained in North American Life's regulatory filings with knowledge or reason to expect that at some time in the future an investor or party seeking to acquire the company might rely on the filings, that evidence would fail as a matter of law under the *Ernst & Young* standard. *See id.* at 581-82; *see also Emerald Oil & Gas,* 348 S.W.3d at 219 ("Therefore, if the evidence shows only that Exxon made material misrepresentations in its plugging reports to the Railroad Commission and knew that lessors and operators in the future may rely on the filings, such evidence would fail as a matter of law . . . ."). The supreme court explained:

> Such a holding would open the cause of action [for fraud] to any person who subsequently relied on any public filings—including stocks and bonds, security interests, real property deeds, and tax filings—with few limits in sight. The intent-to-induce reliance element of fraud is a focused inquiry, more akin to a rifle shot than a shotgun blast. Intent-to-induce reliance is not satisfied by evidence that a misrepresentation may be read in the future by some unknown member of the public or of a specific industry.

*Emerald Oil & Gas*, 348 S.W.3d at 219. The focus, then, is on what the party making the representation knew or had reason to expect *at the time it made the representation.* For example, in *Emerald Oil & Gas*, the supreme court concluded that there was evidence of intent-to-induce reliance because "Exxon knew of an especial likelihood that Emerald specifically would rely on the plugging reports in *a transaction being considered at the time it filed the plugging reports.*" *Id.* (emphasis added). In the present case there is no evidence tending to show that, at the time she prepared and filed the 2003 and 2004 financial statements with the Texas Department of Insurance, Jett knew of any planned merger of North American Life or any other entity. Thus, there is no

10

evidence supporting Tips's assertion that Jett had reason to expect there was an "especial likelihood" that Tips would rely on the regulatory filings for any purpose. *See id.* at 217. The fact that Jett later became aware that Tips was contemplating the merger transaction is of no consequence. We conclude that the 2003 and 2004 financial statements filed with the Texas Department of Insurance do not constitute evidence creating a fact issue regarding the intent element of Tips's fraudulent inducement affirmative defense. To hold otherwise would reduce the intent-to-induce element to a foreseeability standard in contravention of supreme court precedent. *See Ernst & Young*, 51 S.W.3d at 580.

The summary-judgment evidence conclusively established that Jett had no involvement in the merger transaction (other than her insistence that she receive a guaranteed Note in exchange for relinquishing her interest in one of the merging entities) or that she made any representations whatsoever to Tips regarding North American Life. The evidence was uncontroverted that Jett (1) did not sign or file any financial statement for North American Life after 2004, (2) ceased acting as an officer for North American Life in 2005, (3) did not even become aware that Tips had any interest in a merger of MTM and North American Life until 2006, nearly a year after she had filed for divorce from Mitchell, and (4) was not a party to the merger agreement, had no communications with Tips about the merger, and was not involved in any of the negotiations or due diligence related to the merger. Moreover, there is no evidence that Jett had any knowledge of what representations were made to Tips by Mitchell or what information was disclosed to or withheld from Tips in connection with the merger. Thus, assuming that section 27.01 statutory fraud can be asserted as an affirmative defense, Tips has failed to raise a fact issue with respect to one of the essential elements

11

when the defense is based on one person's knowledge of the falsity of a representation made by another person. *See* Tex. Bus. & Com. Code § 27.01(d). To the extent that Tips attempts to attribute to Jett fraud-in-the-inducement by Mitchell, it has presented no evidence that Jett was aware of, encouraged, or endorsed any such conduct. Tips cites no authority for the proposition that Jett may be held liable for Mitchell's fraudulent conduct, if any, simply by virtue of her having been married to Mitchell.

We conclude that Tips failed to meet its burden of creating a fact issue regarding the intent element of its affirmative defense of fraudulent inducement and of its contention that Jett committed statutory fraud under Texas Business and Commerce Code section 27.01. We overrule Tips's first appellate issue.

In its second issue, Tips contends that the trial court erroneously sustained Jett's objections to portions of the Range affidavit. We review the trial court's evidentiary rulings for an abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). "A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). Moreover, "[u]nless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

The trial court sustained Jett's objections to the following averments in the Range affidavit:

12

[North American Life] employed Rudd & Wisdom software in the operation of its business. [North American Life] had the software modified to allow agent reserves to have a negative balance status but to continue to pay commissions on new policies to agents who owed significant amounts to [North American Life] for commissions advanced to them on policies that later lapsed.[4]

Both Clif Mitchell and Virginia Jett are believed to have benefitted financially through this practice due to payment of commissions to North America Insurance Agency, in which RD Tips Inc. believes they owned some sort of interest.[5]

After the merger it was disclosed that Clif Mitchell had a written agreement to purchase an interest in the Pace-Stancil Group.[6]

Further the leases for the funeral homes in Alvin did not make the lessee personally liable thereunder. This apparently was due to the "insider" nature of the transaction. The lessee defaulted on the leases and it appears at this time that [North American Life] will incur a loss on the sale of these properties in excess of $500,000.[7]

The evidence the trial court excluded consisted of details regarding the nature of the misrepresentations Tips believes were contained in North American Life's financial statements and other information provided to it or not disclosed to it during the due diligence period. As discussed above, even assuming that the financial statements Jett prepared contained such misrepresentations, Tips failed to meet its burden of raising a genuine issue of material fact with regard to whether Jett made such misrepresentations with the intent that Tips rely on them or to

---

[4] Jett's objection was based on the absence of a foundation showing that Range had personal knowledge of software matters or that he had any basis for determining whether the software was modified as alleged.

[5] Jett objected that Range's statement was based on speculation.

[6] Jett's objection was based on lack of a foundation showing that Range had personal knowledge of this information.

[7] Jett objected that this statement contained a legal conclusion and was based on speculation.

13

induce Tips into completing the merger or signing the Guaranty. Thus, any error in excluding this summary-judgment evidence did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). Moreover, even if relevant to the question of Jett's intent, it does not appear to us that the trial court abused its discretion in sustaining Jett's objections to these portions of the Range affidavit. We overrule Tips's second appellate issue.

## CONCLUSION

Having overruled Tips's two appellate issues, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed

Filed: April 9, 2015

14