**AFFIRMED and Opinion Filed April 2, 2024**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00600-CR**

**PHILLIP MICHAEL CARTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-83865-2018**

# MEMORANDUM OPINION

Before Justices Reichek, Carlyle, and Miskel
Opinion by Justice Carlyle

A grand jury indicted appellant Phillip Michael Carter for securities fraud, a jury convicted him, and a judge sentenced him to 45 years in prison. On appeal, Carter argues the trial court erred when it (1) excluded his expert witness; (2) permitted the State's fact witness to testify as an expert despite not being designated as one; (3) denied him a mistake-of-fact jury instruction; and (4) denied him a jury instruction that a promise only constitutes fraud if it is made with no intention to perform. In his fifth issue, Carter argues the cumulative effect of these errors denied him a fair trial. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Background

Carter created Texas Cash Cow, LLC, later renamed North Forty, LLC, to purchase and develop real estate. Together, Carter and Bobby "Bob" Eugene Guess, owner of Texas First Financial, LLC, funded property development in Texas via more than $28 million in promissory notes. None of these promissory notes were registered as securities and neither Carter nor Guess were licensed to sell securities.

In 2016, Guess was investigated by the Texas State Securities Board for alleged violations of 18 U.S.C. sections 1956 (money laundering), 1341 (mail fraud), 1014 (loan fraud), and 1348 (securities fraud). Guess and Texas First Financial then received a cease-and-desist order that significantly impacted Carter's access to funding. Carter then sought alternate funding for his commitments, did not inform his investors that he was the subject of government action, and bounced a check for more than six million dollars.

Carter was subsequently indicted for securities fraud. *See* TEX. GOV'T CODE § 4007.203(1)(A), (1)(C), & (2)(A) (criminalizing engagement in any fraud or fraudulent practice or knowingly making an untrue statement of material fact in connection with an offer to sell securities). The indictment included 18 alleged manner and means of committing securities fraud.[1] Of these, the most relevant to

---

[1] The bulk of the indictment accused Carter of intentionally failing to disclose material facts, including the facts that:

(1) investors' funds were being used to pay personal and familial expenses;

our analysis are the State's allegations that Carter knowingly made untrue statements of material facts in connection with an offer to sell securities, including that he (1) had a chemical engineering degree from the University of Virginia, (2) had worked as a project engineer for Texas Instruments, and (3) had traveled with and/or worked for Robert Kiyosaki.

## Analysis

---

(3) investors' funds were used for purposes other than developing real property;

(4) investors' funds were being used to pay investors' purported principal investment and/or purported return on their investments;

(9) Guess was served with a target letter in 2016 informing him that he was the subject of a United States Secret Service investigation into alleged money laundering, mail fraud, loan fraud, and securities fraud;

(10) he was served with a similar target letter in 2016;

(11) on or about August 5, 2016, a search warrant was executed on the premises of Texas First Financial against said company and Bob Guess, Carter's sales agent, based on evidence of criminal activity;

(12) on or about August 15, 2016, an Emergency Cease and Desist Order was issued on Bob Guess and Texas First Financial, Carter's agents, ordering the temporary cessation of sales for any security in Texas;

(13) Carter bounced a six-million-dollar check to Crossland Construction Company, Inc.;

(14) Crossland Construction Company, Inc. filed a Mechanics' and Materialmen's Lien on real property owned by one of Carter's companies;

(15) on or about January 13, 2017, Crossland Construction Company, Inc., filed a Mechanics' and Materialmen's Lien on real property owned by Carter's company;

(16) on or about January 13, 2017, Crossland Construction Company, Inc., filed a Mechanics' and Materialmen's Lien on real property owned by another one of Carter's companies;

(17) Carter's agent, Bob Guess was not authorized to sell securities in Texas; and

(18) Carter was not authorized to sell securities in Texas.

The indictment also alleged Carter knowingly and intentionally made misrepresentations of material fact that:

(2) investors' funds would be used for the purpose of developing real property;

(5) investments were backed by hard assets;

(6) he obtained a Chemical Engineering Degree from the University of Virginia;

(7) he worked as a project engineer for Texas Instruments; and

(8) he traveled with and/or worked for Robert Kiyosaki.

**1. Exclusion of Carter's expert**

In his first issue, Carter argues the trial court abused its discretion when it excluded his expert's testimony. The State counters that even if the trial court erred, its exclusion of Carter's expert was harmless. We evaluate harm in the admission or exclusion of evidence for non-constitutional error; in doing so, "we examine the record as a whole, and if we are fairly assured that the error did not influence the jury or had but a slight effect, we conclude that the error was harmless." *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005). We conclude any error in excluding Carter's expert was harmless under the circumstances.

Carter's expert was a forensic accountant and a certified fraud examiner. Assuming without deciding that Carter's expert was qualified to render expert testimony in this case, that the underlying data was reliable, and that the expert testimony was relevant, both the record and Carter's appellate brief demonstrate that (1) his defense focused on his lack of intent to defraud his investors and (2) his expert's testimony would have helped him establish the viability of his plan to repay them. Carter further argues that his expert's testimony would have helped him disprove four of the manner and means paragraphs in the State's indictment. Even when we accept all of these arguments as true, there were 14 alternative alleged manners and means that would have been unaffected by his expert's testimony, each

was unchallenged in the remainder of Carter's appellate brief, and there is unchallenged evidence supporting some of those manners and means.

Among other things, the Texas Securities Act criminalizes engaging in any fraud or fraudulent practice or knowingly making an untrue statement of material fact in connection with an offer to sell securities. *See* TEX. GOV'T CODE § 4007.203(1)(A), (1)(C), & (2)(A). Among the 18 alleged manners and means of violating the Texas Securities Act, the State's indictment alleged Carter falsely represented that he (1) had a chemical engineering degree from the University of Virginia, (2) had worked as a project engineer for Texas Instruments, and (3) had traveled with and/or worked for Robert Kiyosaki. The record contains evidence showing that Carter made each of these three representations, that each was false, and that each was material. On appeal, Carter does not challenge the sufficiency of the evidence supporting his conviction under these three manners and means.

After examining the record as a whole, we conclude that the trial court's exclusion of Carter's expert was harmless because the proffered testimony concerning his intent to repay his investors had no direct or logical connection to other allegations against him or the unchallenged sufficiency of the evidence supporting those allegations. Thus, we are fairly assured that any error in excluding Carter's expert had but a slight effect and conclude the error was harmless. *See Ray*, 178 S.W.3d at 836. We therefore overrule Carter's first issue on appeal.

**2. Admission of Lujan's testimony**

In his second issue, Carter argues the trial court abused its discretion when it permitted Ms. Eliza Lujan, a State's witness, to testify concerning financial issues relating to Carter's businesses because, according to Carter, Lujan (1) provided expert testimony despite not being designated as an expert and (2) "clearly did not perceive the source financial documents she reviewed at the time of the events." The State counters that the trial court did not err, that any error was harmless, and that Carter did not preserve his objections for appellate review. Assuming without deciding that the trial court erred and that Carter preserved his objections, we agree with the State that any error was harmless.

Carter was charged with violating the Texas Securities Act, an act that criminalizes engagement in any fraud or fraudulent practice or knowingly making an untrue statement of material fact in connection with an offer to sell securities. *See* TEX. GOV'T CODE § 4007.203(1)(A), (1)(C), & (2)(A). Among the 18 alleged manners and means of violating the Texas Securities Act, the State's indictment alleged Carter falsely represented that he (1) had a chemical engineering degree from the University of Virginia, (2) had worked as a project engineer for Texas Instruments, and (3) had traveled with and/or worked for Robert Kiyosaki. The record contains unchallenged evidence showing that Carter made each of these three representations, that each was false, and that each was material to at least one

investor. On appeal, Carter does not challenge the sufficiency of the evidence concerning these three allegations.

Under these circumstances, if there was error, it was harmless because Lujan's testimony had no direct or logical connection to other allegations, unchallenged legally sufficient evidence supported those allegations, and the jury charge authorized the jury to convict Carter if it found he knowingly made untrue statements of material facts in connection with an offer to sell securities. Further, Lujan's testimony was harmless because it consisted of observations she made from records that had already been admitted into evidence. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). Thus, we are fairly assured that any error in admitting Lujan's testimony had but a slight effect and conclude the error was harmless. *Ray*, 178 S.W.3d at 836. We therefore overrule Carter's second issue.

### 3. Denial of mistake-of-fact instruction

In his third issue, Carter argues the trial court erred when it failed to provide the jury with a mistake-of-fact instruction based on Mr. Guess's testimony that he did not believe they were selling securities at the time and that he, Guess, now knows differently. *See* TEX. PENAL CODE § 8.02. This testimony supports a conclusion that Mr. Guess made a mistake but does not entitle Carter to a mistake-of-fact instruction.

Mistake-of-fact instructions turn on the defendant's mistaken belief, not third parties. *Montgomery v. State*, 588 S.W.2d 950, 953 (Tex. Crim. App. [Panel Op.] 1979). Even if Carter made a relevant mistake based on Mr. Guess's beliefs, a belief

that one's actions are not unlawful is not a mistake of fact. *Vitiello v. State*, 848 S.W.2d 885, 887 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). Thus, the trial court did not err when it denied Carter a mistake-of-fact instruction. We therefore overrule Carter's third issue.

### 4. Denial of jury instruction concerning failure to fulfill a promise

In his fourth issue, Carter argues the trial court reversibly erred when it declined to instruct the jury that failure to fulfill a promise is not fraud unless the promisor never intended to fulfill it. *See U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000). Because Carter timely raised this issue at trial, we reverse only if we conclude the trial court erred and that Carter suffered some harm as a result. *See Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). Assuming the trial court's refusal to provide Carter's requested instruction was erroneous,[2] our analysis of the actual degree of harm includes an examination of the entire jury charge, the state of the evidence including the contested issues and weight of probative evidence, the arguments of counsel, and any other relevant information revealed by the record as a whole. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988).

---

[2]    *See* TEX. R. APP. P. 47.4.

The court instructed the jury that (1) Carter was charged "with the offense of the commission of fraud in connection with the sale or offer for sale of securities in the amount of $100,000.00 or more"; (2) "Our statutes provide that it shall be unlawful for any person to directly or indirectly engage in any fraud or fraudulent practice in connection with the sale or offer of sale of any security or securities"; (3) "The term 'fraud' or 'fraudulent practice' means any intentional failure to disclose a material fact or any misrepresentations, [sic] in any manner of a relevant fact"; (4) "A fact is 'material' if there is a substantial likelihood that it would have assumed actual significance in the deliberations of a reasonable investor, in that it would have been viewed by the reasonable investor as significantly altering the total mix of available information used in deciding whether to invest"; (5) "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result"; (6) "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist"; (7) "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result"; and (8) "If you find that the State has failed to prove, beyond a reasonable doubt, at least one of the manners and means by which the defendant is alleged to have committed fraud in connection with the sale and offer for sale of securities listed in the indictment, you

must find the defendant not guilty." Further, the application portion charged the jury that it was to find Carter guilty if it found he (1) knowingly and intentionally represented that he (a) obtained a Chemical Engineering Degree from the University of Virginia, (b) worked as a project engineer for Texas Instruments, or (c) traveled with and/or worked for Robert Kiyosaki; and (2) that each of the foregoing statements was a misrepresentation of a material fact.

Turning to the state of the evidence, including the contested issues and weight of probative evidence, the record reveals (1) Carter's business website represented that "Robert Kiyosaki, investment mogul and author of the *Rich Dad, Poor Dad* book series, took notice and invited Carter to travel with his companies selling his single-family [real estate owned] product to Kiyosaki students"; (2) an affidavit from Robert Kiyosaki stating that, "A diligent search of these records has revealed there no records [sic] of Phillip Michael Carter . . . traveling with, touring with or working as an employee and/or contractor for myself, Robert Kiyosaki, nor the Rich Dad company," (3) a brochure from Carter's company representing that he "worked for Texas Instruments Worldwide Construction Team"; (4) a business record affidavit from Texas Instruments that stated, "A diligent search of these records has revealed that there no records [sic] of employment for Phillip Michael Carter . . . as an employee and/or contractor of Texas Instruments"; (5) at least one investor believed Carter worked for Texas Instruments; (6) Carter's business website represented that he "obtained a Chemical Engineering Degree from University of Virginia [sic]"; (7)

an attested certification from the University of Virginia stating that it had no records of Phillip Michael Carter receiving any degree therefrom; (8) an investor's testimony that he was an engineer and Carter's representation that he was also an engineer resonated with him because he "tend[ed] to put a little bit more faith" in someone in the engineering field who was "held to a standard of ethics"; and (9) testimony that at least one investor would not have invested with Carter if he had known Carter was lying.

Counsel for the State argued that the jury heard (1) Carter told investors that he worked for Texas Instruments and that he received an engineering degree from the University of Virginia; (2) both representations were false; and (3) both representations were important to at least one investor. Counsel for the State further argued that the jury heard evidence that Carter claimed to have toured with Robert Kiyosaki, that he never did so, and that investors would not have invested with Carter if they knew he had lied. Finally, counsel for the State argued that each representation was a misrepresentation of a relevant fact.

Carter's counsel responded that the foregoing misrepresentations were not on the websites that Carter created, that "there's evidence in the record about TI [Texas Instruments] . . . [a]nd also about [Robert] Kiyosaki. Because remember, Cheramie Curtis came in and testified there was the travel bag, things that they go traveling

with.[3] And so the things they could have done to say – because he says he traveled the world, right?" Carter's counsel further argued that because there was a Secret Service agent who testified as a witness for the State, it would have made sense for the State to show that Carter never traveled outside of the country but that it nonetheless failed to do so.

Finally, we review any other relevant information revealed by the record as a whole. *Almanza*, 686 S.W.2d at 171. Neither party has identified any other information relevant to our analysis and, given the scope and results thereof, we are unaware of any other information relevant thereto.

Assuming that the trial court erred when it declined to give Carter's requested instruction, we conclude its error was harmless under the circumstances because (1) the State charged Carter with committing securities fraud; (2) the indictment alleged 18 manners and means of committing securities fraud; (3) several of those manners and means included knowingly making untrue statements of material fact; (4) evidence supports the State's allegations that Carter knowingly made untrue statements of material facts in connection with an offer to sell securities; (5) the legal sufficiency of the evidence supporting these allegations has not been attacked on appeal; (6) the State emphasized these misrepresentations; (7) the State introduced

---

[3] Specifically, Ms. Curtis's testimony was that an employee of Texas Cash Cow and Carter "traveled promoting Texas Cash Cow," that there was a rolling travel bag containing a base for a banner in the office, that she did not know what was on the banner, and that she was not allowed to dispose of it.

evidence supporting the jury's finding of materiality with respect to each misstatement, and (8) Carter's requested jury instruction would not have impacted the jury's determination of these manners and means. Thus, we conclude Carter did not suffer any harm as a result of the trial court's assumed error and we overrule his fourth issue. *See Abdnor*, 871 S.W.2d at 732.

### 5. Cumulative error

In his fifth issue, Carter argues that the cumulative effect of the trial court's errors entitles him to reversal. *See Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988). We disagree. None of the errors we have assumed for the purposes of our analysis undermine the State's unchallenged presentment of evidence that Carter knowingly made untrue statements of material fact in furtherance of his effort to sell unregistered securities through an unlicensed agent. Further, Carter's appellate brief does not challenge the effect of these assumed errors on his sentence. *See* TEX. R. APP. P. 38.1(i). Thus, we overrule Carter's fifth issue.

### Conclusion

Having overruled each of Carter's five issues on appeal, we affirm his conviction.

220600f.u05
Do Not Publish                                    /Cory L. Carlyle/
TEX. R. APP. P. 47.2(b)                   CORY L. CARLYLE
                                                        JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

PHILLIP MICHAEL CARTER,
Appellant

No. 05-22-00600-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 296-83865-
2018.
Opinion delivered by Justice Carlyle.
Justices Reichek and Miskel
participating.

       Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 2nd day of April, 2024.